UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  2:22-mc-00250-JAK-AFMx                                                           Date:  June 12, 2023

Title   In Re Application of Patokh Chodiev et al

Present: The Honorable:    ALEXANDER F. MacKINNON, U.S. Magistrate Judge

| Ilene Bernal | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings (In Chambers):  Order Denying Motion to Quash Subpoenas; Granting Request for Protective Order**
**(Filed May 16, 2023, ECF No. 12)**

On December 19, 2022, Patokh Chodiev ("Applicant") filed an *ex parte* application ("Application") for an order pursuant to 28 U.S.C. § 1782 seeking leave to issue document and deposition subpoenas to First Idea International Ltd. ("First Idea").  The Application requested the ability to obtain discovery regarding an "unsupported, inaccurate, misleading, and damaging report on Mr. Chodiev in [the] World-Check Risk Intelligence Service database that First Idea appears to have urged Refinitiv to publish." (ECF No. 1 at 6.)

The Application was granted on January 5, 2023.  (ECF No. 7.)  According to that Order, any discovery would be governed by the Federal Rules of Civil Procedure and the Central District Local Rules.  The Order also reserved First Idea's right to object to the subpoenas:  "Nothing in this Order prevents First Idea International Ltd. from objecting to the discovery . . . .The Court shall retain jurisdiction over the matter for the purpose of enforcing this Order and resolving any discovery disputes."  (ECF No. 7 at 6.)

On May 16, 2023, First Idea filed a motion to quash the subpoenas ("Motion"). (ECF No. 12.)  The Motion seeks to quash the subpoenas as being obtained in bad faith.  Alternatively, the Motion requests that "unsupported allegations" in the Application be struck and that a protective order be entered that narrows the subpoena topics.  Applicant opposes the Motion, and the parties have made a number of filings in support of their respective positions.  (ECF Nos. 13, 14, 15, 17, 19, 24.)  A telephonic hearing was held on May 25, 2023, during which the Court stated its views on the merits of the Motion.  At the conclusion of the hearing, the Court ordered the parties to meet and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-mc-00250-JAK-AFMx                              Date:  June 12, 2023

Title     In Re Application of Patokh Chodiev et al

confer regarding narrowed scopes for the subpoenas.  The parties did so, but they could not reach an agreement.  (ECF Nos. 32, 33.)

For the reasons stated below and during the telephonic hearing, the Court denies the request to quash the subpoenas and the request to strike language from the Application, but grants the request for a protective order narrowing the scope of the requested documents and the topics for testimony.

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Discovery need not be admissible in evidence to be discoverable.  *Id.*  However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  In response to requests for production, a party has an obligation under Fed. R. Civ. P. 34 to produce non-objectionable, response documents within the party's possession custody or control.  Further, the Federal Rules of Civil Procedure must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

First Idea bases it motion to quash on the argument that the Application was made in bad faith because it contained false and defamatory allegations – most significantly that First Idea "pushed aggressively" and made "repeated inquiries and prodding" for Mr. Chodiev's inclusion in the World-Check Risk Intelligence Service database.  (*See* ECF No. 1-1 (Application) at 7.)  While these characterizations in the Application were phrased in an argumentative tone, Applicant had a good faith basis for asserting that First Idea personnel started the process that led to Mr. Chodiev's listing in the World-Check database.  On February 25, 2022, Applicant received a letter from counsel for World-Check stating that an inquiry from First Idea "began the process that resulted in Mr. Chodiev's inclusion in the World-Check database . . . ."  (ECF No. 14-1 at 2.)  According to this letter, during a July 31, 2020 teleconference, First Idea personnel asked World-Check to run

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-mc-00250-JAK-AFMx                                            Date:  June 12, 2023

Title      In Re Application of Patokh Chodiev et al

Mr. Chodiev's name through its database.  When this yielded no hits for Mr. Chodiev's name, the First Idea personnel then asked why he was not included in the database "given the adverse information concerning Mr. Chodiev available on Google . . . ."  *Id*. at 3.  After this, World-Check began an internal process to determine if Mr. Chodiev should be included in the database and found an article regarding a French criminal investigation into Mr. Chodiev.  (*Id.*)  Apparently, this led World-Check to include Mr. Chodiev in its database.  (*Id.*)  From Applicant's perspective, it was reasonable to conclude from these facts that the likely reason why First Idea raised the question of Mr. Chodiev – including the Google hits about his background – with World-Check was to push and prod World-Check to include Mr. Chodiev in the World-Check database. While First Idea has a different interpretation of the World-Check letter, Applicant's reading was a reasonable (and perhaps more plausible) interpretation.  Counsel for Applicant has conceded that in hindsight, it would have been advisable to emphasize facts over argumentative characterizations in the Application, but that is not a basis for the Court to quash the subpoena given facts asserted in the letter from World-Check's counsel.  For the same reason, there is no ground for the Court to strike portions of the Application.

On the other hand, the Court agrees with First Idea that the subpoena categories should be narrowed – in light of additional facts provided by First Idea regarding the parties, their relationships and the nature of the dispute.  Although the subpoenas seek a wide range of information about First Idea (including all documents relating to Mr. Chodiev's companies), the relevant area of inquiry of First Idea should be more limited – namely documents relating to the July 31, 2020 teleconference between First Idea and World-Check.  The Court concludes that Applicant's attempt to obtain documents and testimony from First Idea that relate generally to Mr. Chodiev and his companies goes beyond what is relevant and proportional now that it is known that First Idea and its founder have had a multi-year, ongoing business relationship with one of Mr. Chodiev's companies (Eurasian Resources Group).  (*See, e.g.*, ECF No. 13 at 10-13).  In these circumstances, requiring First Idea to comply with the broad categories of the subpoena would be a disproportionate burden and would address largely irrelevant topics.

Accordingly, the document requests for the document subpoena to First Idea are limited to three categories:

- All documents mentioning Patokh Chodiev.
- All documents reflecting or relating to communications between First Idea and Thomson Reuters, including First Idea's July 31, 2020 teleconference with World-Check, L'Echo publications, and Mediapart (Mediapart.fr) publications.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-mc-00250-JAK-AFMx                                                 Date:  June 12, 2023

Title     In Re Application of Patokh Chodiev et al

- All documents reflecting or relating to communications between First Idea and Refinitiv, including First Idea's July 31, 2020 teleconference with World-Check, L'Echo publications, and Mediapart (Mediapart.fr) publications.

Similarly, the matters for examination in the deposition subpoena to First Idea are limited to the following three categories:

- Documents produced in response to the document subpoena.
- All communications between First Idea and Thomson Reuters, including First Idea's July 31, 2020 teleconference with World-Check, L'Echo publications, and Mediapart (Mediapart.fr) publications, as well as all internal First Idea discussions, plans and assessments relating to these communications.
- All communications between First Idea and Refinitiv, including First Idea's July 31, 2020 teleconference with World-Check, L'Echo publications, and Mediapart (Mediapart.fr) publications, as well as all First Idea internal discussions, plans and assessments relating to these communications.

This ruling is without prejudice to Applicant filing a further application for broader subpoenas if warranted by additional information learned from the current subpoenas as limited by this order.

    First Idea also seeks a cost-sharing order under Fed. R. Civ. P. 45(d)(2)(B)(ii). Given the breadth of the original requests in the document subpoena, First Idea retained a third-party vendor to process and host electronically stored information ("ESI"). (ECF No. 17-3 at 3.) An initial sweep of First Idea's devices yielded a large amount of potentially responsive ESI (17 GB). (*Id.*) This extensive collection and review of ESI can now cease (or be substantially limited) given the narrowed subpoena categories under this order, but First Idea has already incurred $21,500 in ESI collection and hosting fees. (*Id.*)

    A recent decision in this District has summarized the law regarding shifting of costs for compliance with a Rule 45 subpoena:

> Under Rule 45(d)(2)(B)(ii), an order to compel production "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." The Ninth Circuit has held that this rule "requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). "[T]he rule is mandatory." *Id.* "[T]he only question before the court in considering whether to shift

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:22-mc-00250-JAK-AFMx                                            Date:  June 12, 2023

Title        In Re Application of Patokh Chodiev et al

costs is whether the subpoena imposes significant expense on the non-party.  If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"  *Id.* (citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).  Even $9,000 in cost may be sufficiently significant to justify cost-shifting.  *Id.* at 1185 (citing with approval *Linder*, which found $9,000 to be sufficiently significant to justify cost-shifting).

*Philips North America LLC v. KPI Healthcare, Inc.*, 2021 WL 6103526, at *5 (C.D. Cal. Sept. 1, 2021).

Here, the Court finds that First Idea's $21,500 in collection and hosting fees is "significant" expense and that allocating one-half of these costs to Applicant is necessary to render the remainder of the ESI costs non-significant.  Accordingly, pursuant to Rule 45(d)(2)(B)(ii), the Court orders Applicant to reimburse First Idea in the amount of $10,750.

Finally, First Idea initially requested an award of its attorneys' fees in bringing the Motion, but it appears to have withdrawn this request.  (ECF No. 32-3.)  In any event, the Court finds that attorneys' fees should not be awarded to either side given the mixed result obtained by the Motion, the positions asserted by both sides and the interests of justice.

IT IS SO ORDERED.

|  | : |
|---|---|
| **Initials of Preparer** | ib |